**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

VICTOR SUSKI,
      Plaintiff,

      v.

BOOMTV, INC., *et al.*,
      Defendants.

No. 3:25-cv-860 (SRU)

## <u>ORDER ON MOTION TO DISMISS</u>

Plaintiff Victor Suski ("Suski") sued defendants BoomTV, Inc. ("BoomTV")[1] and Sumit Gupta ("Gupta") (collectively, the "Defendants") in Connecticut state court under the Connecticut Wage Act, Conn. Gen. Stat. § 31-58, *et seq.*, for allegedly failing to pay Suski's wages. *See generally* Doc. Nos. 1, 23. The Defendants removed the lawsuit to this court pursuant to 28 U.S.C. §§ 1332(a), 1441, 1446. Doc. No. 1 at 1-2.

Gupta moved to dismiss count two of Suski's amended complaint under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.[2] Doc. No. 32. Suski opposes Gupta's motion to dismiss, arguing Suski "satisfies both the long arm statute and the due process requirements" for personal jurisdiction. Doc. No. 36 at 1, 3.

For the following reasons, I **grant** Gupta's motion to dismiss count two, doc. no. 32.

---

[1] Defendant BoomTV filed a petition for chapter 7 bankruptcy on March 23, 2026 in the Northern District of California. *See BoomTV, Inc.*, Dkt. No. 26-30254, Bankr. N.D. Cal, Doc. No. 1. I take judicial notice of BoomTV's bankruptcy proceeding. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) ("[D]ocket sheets are public records of which the court could take judicial notice . . . ."). Pursuant to 11 U.S.C. § 362, proceedings against BoomTV, Inc. are stayed due to the bankruptcy filing. *See* Doc. No. 45.

[2] Counts one and three of Suski's complaint allege that BoomTV violated the Connecticut Wage Act, Conn. Gen. Stat. § 31-58, *et seq.*, and breached a contract with Suski, respectively. Doc. No. 23 at 4-6. The case is stayed with respect to BoomTV. *See* Doc. No. 45.

## I.    Background

### A.  Factual History

Suski is a citizen of Connecticut.  Doc. No. 23 ¶ 3.  BoomTV is a Delaware corporation "with its principal place of business and registered agent" in California.  *Id.* ¶ 4.  Gupta "is the chief executive officer" ("CEO") of BoomTV and "had the final and ultimate control over" whether Suski was paid his wages.  *Id.* ¶ 5.  Gupta is a citizen of California.  *Id.* ¶ 6.  Suski alleges that BoomTV and Gupta employed him, and he worked remotely from Connecticut.  *Id.* ¶¶ 7-8.  Further, "BoomTV was transacting business in Connecticut."  *Id.* ¶ 11.

In September 2019, Suski "began working for BoomTV as an independent contractor through a business" Suski owned.  Doc. No. 23 ¶ 12.  Suski "was hired as a full-time, remote employee at BoomTV" in February 2020.  *Id.* ¶ 13.  BoomTV, through Gupta, granted Suski a bonus in a letter dated October 5, 2022 (the "October 2022 bonus letter").  *Id.* ¶ 14; *id.* at 9.  The letter states that "BoomTV is granting [Suski] a total bonus of $68,000."  *Id.* ¶ 14; *id.* at 9.  It also states that:  "BoomTV will pay [Suski's] bonus of $12,000.00 payable on the next Company's payroll dates.  BoomTV will pay the remainder bonus of $56,000.00 over the next three years. If [Suski has] any questions regarding this, don't hesitate to contact me."  *Id.* ¶ 15; *id.* at 9.  The bonus letter was signed by Gupta in his capacity as BoomTV's CEO.  *Id.* at 9.

Suski asserts that the $68,000 bonus granted via the October 2022 bonus letter "was the consideration upon which [he] relied when he agreed to continue his employment with BoomTV" and was "not contingent on any action or condition."  *Id.* ¶¶ 16-17.  BoomTV paid Suski the initial $12,000.00 in accordance with the October 2022 bonus letter.  *Id.* ¶¶ 17-18.

Suski reported directly to Gupta.  *Id.* ¶ 19.  As BoomTV's CEO, Gupta "was solely responsible for ensuring" BoomTV compensated Suski correctly pursuant to the October 2022 bonus letter.  *Id.* ¶ 20.  However, in early 2025, BoomTV "did not have enough money to pay all

of its employees correctly and began laying off employees," including Suski.  *Id.* ¶ 22.  After

BoomTV terminated his employment, Suski "requested the balance of his compensation package

through multiple direct communications" with Gupta.  *Id.* ¶ 23.

To date, BoomTV has only paid Suski $12,000 of the promised bonus; neither BoomTV

nor Gupta made further bonus payments to Suski.  *Id.* ¶¶ 17, 23.  Suski alleges that Gupta

violated Conn. Gen. Stat. § 31-58, *et seq.*, by failing to pay him the remaining $56,000 promised

in the October 2022 bonus letter.  *Id.* ¶¶ 30-34.  Suski seeks the following relief:  $112,000 in

money damages; reasonable attorneys' fees and costs pursuant to Conn. Gen. Stat. § 31-72; and

pre- and post-judgment interest pursuant to Conn. Gen. Stat. §§ 31-71c(b), 31-72, and 37-3b.  *Id.*

at 6-7.

B.  Procedural History

Suski commenced this action against the Defendants in the superior court of Connecticut

for the judicial district of New London on April 14, 2025.  Doc. No. 1 at 1-2, 8.  On May 30,

2025, the Defendants removed the action this court pursuant to 28 U.S.C. §§ 1332(a), 1441,

1446.  *Id.* at 1-2.  Suski filed an amended complaint on August 22, 2025.  Doc. No. 23.  On

November 4, 2025, Gupta moved to dismiss count two of Suski's complaint for lack of personal

jurisdiction.  Doc. No. 32.  Suski filed an opposition to Gupta's motion to dismiss on December

23, 2025.  Doc. No. 36.

II.     **Standard of Review**

A plaintiff bears the burden of showing that the court has personal jurisdiction over each

defendant.  *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).  *See*

*also Cogswell v. American Transit Ins. Co.*, 282 Conn. 505, 515 (Conn. 2007) ("If the defendant

challenging the court's personal jurisdiction is a foreign corporation or a nonresident individual,

it is the plaintiff's burden to prove the court's jurisdiction.").  "In the absence of an evidentiary hearing or a trial on the merits, all pleadings and affidavits are construed in the light most favorable to the plaintiff."  *Sherman Associates v. Kals*, 899 F. Supp. 868, 870 (D. Conn. 1995); *See also DiStefano v. Carozzi N. America, Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) ("We construe the pleadings and affidavits in the light most favorable to [the plaintiff], resolving all doubts in his favor.").

Where, as here, there has been no discovery on jurisdictional issues and the court is relying solely on the parties' pleadings and affidavits, "the plaintiff need only make a prima facie showing" that the court possesses personal jurisdiction over the defendant.  *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999).  "This prima facie showing must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant."  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (internal citation and quotation marks omitted); *Plimpton v. Bank of Jackson Hole*, 2021 WL 765243, at \*9 (D. Conn. Feb. 26, 2021).

Courts do not draw "argumentative inferences" in the plaintiff's favor when evaluating whether a plaintiff has met his burden.  *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) ("We will, however, construe jurisdictional allegations liberally and take as true uncontroverted factual allegations.").  "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits."  *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727-28 (2d Cir. 2012) (internal quotation marks omitted) (quoting *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993)).  Moreover, "the court must

resolve all doubts in the plaintiff's favor." *U.S. Surgical Corp. v. Imagyn Med. Technologies, Inc.*, 25 F. Supp. 2d 40, 44 (D. Conn. 1998).

There are three requirements for a court to exercise personal jurisdiction:  (1) "the plaintiff's service of process upon the defendant must [be] procedurally proper[;]" (2) "there must be a statutory basis for personal jurisdiction that renders such service of process effective[;]" and (3) "the exercise of personal jurisdiction must comport with constitutional due process principles." *Licci ex rel. Licci*, 673 F.3d at 59-60.

"[W]here a jurisdictional determination is dependent on the resolution of a critical factual dispute, it cannot be decided on a motion to dismiss in the absence of an evidentiary hearing to establish jurisdictional facts." *Conboy v. State*, 292 Conn. 642, 652 (Conn. 2009).  "[I]f the question of jurisdiction is intertwined with the merits of the case, a court cannot resolve the jurisdictional question without a hearing to evaluate those merits." *Id.* at 653.  *See also London v. Polishook*, 189 F.3d 196, 198 (2d Cir. 1999) ("[W]here jurisdiction is so intertwined with the merits that its resolution depends on the resolution of the merits, the trial court should employ the standard applicable to a motion for summary judgment.") (internal citation omitted).

## III.    Discussion

In his motion to dismiss, Gupta argues that Suski cannot establish personal jurisdiction over him because Gupta "lacks any contacts with Connecticut sufficient to confer jurisdiction under Connecticut's long-arm statute" and, therefore, "the exercise of any jurisdiction over [him] would not comport with due process."  Doc. No. 32-1 at 5.

Suski opposes Gupta's motion to dismiss, arguing that Suski's claims "satisfy[y] both the long[-]arm statute and the due process requirements" for this Court to exercise personal jurisdiction over Gupta.  Doc. No. 36 at 3.  Further, Suski argues that whether Gupta is an

"employer" under Conn. Gen. Stat. §§ 31-7la(l) and 31-72 is a question for the jury and should

not be resolved on a motion to dismiss for lack of personal jurisdiction. *Id.* at 10-12; Doc. No.

23 at 5. Finally, Suski points to this court's discretion to permit additional discovery or hold an

evidentiary hearing before resolving Gupta's motion to dismiss. Doc. No. 36 at 12.

A. <u>Whether Connecticut's long-arm statute confers personal jurisdiction over Gupta</u>

In diversity cases, courts apply the forum state's law to determine whether the court has

personal jurisdiction over a defendant. *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d

Cir. 1963). "Connecticut utilizes a familiar two-step analysis to determine if a court has personal

jurisdiction. First, the court must determine if the state's long-arm statute reaches the

[defendant]. Second, if the statute does reach the [defendant], then the court must decide

whether that exercise of jurisdiction offends due process." *Bensmiller v. E.I. Dupont de*

*Nemours & Co.*, 47 F.3d 79, 81 (2d Cir. 1995) (citing *Green v. Sha-Na-Na*, 637 F. Supp. 591,

594-95 (D. Conn. 1986)). *See also Kenny v. Banks*, 289 Conn. 529, 533 (Conn. 2008)

(reiterating the two-step analysis). Courts only proceed to step two if the state's long-arm statute

reaches the defendant. *Cogswell v. American Transit Ins. Co.*, 282 Conn. 505, 516-17 (Conn.

2007) ("[W]e begin by examining the defendant's statutory claim to determine whether we may

resolve the jurisdictional issue without addressing the constitutional issue.").

Connecticut's long-arm statute states that:

> As to a cause of action arising from any acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual, foreign partnership or foreign voluntary association . . . who in person or through an agent: (1) Transacts any business within the state; (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; (3) commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should

reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; (4) owns, uses or possesses any real property situated within the state; or (5) uses a computer, as defined in subdivision (1) of subsection (a) of section 53-451, or a computer network, as defined in subdivision (3) of subsection (a) of said section, located within the state.

Conn. Gen. Stat. § 52-59b(a).

Gupta maintains that no section of Connecticut's long-arm statute allows this court to assert personal jurisdiction over him. Doc. No. 32-1 at 6. Suski argues that Connecticut's long-arm statute reaches Gupta "through multiple means," and its "remedial purpose is to provide Connecticut residents with a convenient forum to seek redress for losses they suffer in Connecticut" caused by a nonresident. Doc. No. 36 at 3. Specifically, Suski points to subsections 52-59b(a)(1) and 52-59b(a)(2) as conferring personal jurisdiction over Gupta. Doc. No. 32-1 at 4-7.

1. *Whether Suski alleges sufficient facts to confer jurisdiction over Gupta under section 52-59b(a)(1)*

Section 52-59b(a)(1) confers personal jurisdiction on a nonresident individual who "[t]ransacts any business within the state." Conn. Gen. Stat. § 52-59b(a)(1). Connecticut courts hold that the "transact any business" requirement can be satisfied by "a single purposeful business transaction." *Zartolas v. Nisenfeld*, 184 Conn. 471, 474 (Conn. 1981). "A nonresident individual who has not entered the state physically nevertheless may be subject to jurisdiction under [section] 52-59b(a)(1) if that individual has 'invoked the benefits and protection of Connecticut's laws' by virtue of his or her 'purposeful Connecticut related activity . . . .'" *LucidRisk, LLC v. Ogden*, 615 F. Supp. 2d 1, 5 (D. Conn. 2009) (quoting *Zartolas*, 184 Conn. at 475).

"In determining whether the plaintiffs' cause of action arose from the defendants' transaction of business within [Connecticut]" courts "do not resort to a rigid formula." *Zartolas*,

7

184 Conn. at 477 (holding the court had personal jurisdiction over out-of-state defendants despite the execution of a warranty deed in Iowa because the property was in Connecticut).  Instead, courts "balance considerations of public policy, common sense, and the chronology and geography of the relevant factors."  *Id.*; *id.* at 475 ("By owning land in Connecticut, the defendants invoked the benefits and protection of Connecticut's laws of real property, including as an incident of ownership the right to sell the property.").

Additionally, Connecticut does not recognize the "fiduciary shield doctrine,' which shields corporate officers from personal jurisdiction where their only contact with the state is an action taken on behalf of the corporation."  *Isola v. RLJ Elec. Corp.*, 2014 WL 1687724, at *4 (Conn. Super. Ct. Mar. 28, 2014) (citing *Under Par Associates, LLC v. Wash Depot A, Inc.,* 47 Conn. Sup. 319 (2001)); *Grunberger Jewelers v. Leone*, 2004 WL 1393608, at *3 (D. Conn. June 18, 2004) (stating that Connecticut state courts have not adopted the fiduciary shield doctrine).

At least one court in this district has held that a plaintiff's "remote work relationship alone is sufficient to create a prima facie case for jurisdiction under the broad standard of § 52-59b(a)(1)."  *Mills v. Profit Drivers LLC*, 2026 WL 25629, at *5 (D. Conn. Jan. 5, 2026).  Mills, the plaintiff, was a resident of Connecticut working remotely for Profit Drivers LLC ("Profit Drivers"), a Tennessee limited liability company whose CEO and chief operating officer ("COO") resided in Tennessee and Texas, respectively.  *Id.* at *1.  Mills sued Profit Drivers, its CEO, and its COO on several counts, including for failing to compensate him in violation of Conn. Gen. Stat. § 31-72.  *Id.*

Profit Drivers' CEO and COO were not physically present in Connecticut throughout their employment relationship with Mills and "their only connection to Connecticut" was Mills.  *Id.* at *5, *7; *id.* *5 ("Profit Drivers has no other employees in-state, is not registered to do

business in Connecticut, and derives no revenue from Connecticut."). Despite "not otherwise conduct[ing] any Connecticut-based business," the court held that the defendants' "reaching into the forum state to hire [Mills]" and their "ongoing employment relationship with the worker located in the forum state . . . constitute[ed] [a] business transaction sufficient to confer personal jurisdiction under [section] 52-59b(a)(1)." *Id.* at *6.

Gupta avers that he has never been to Connecticut nor contracted with an individual or business entity within Connecticut. Doc. No. 32-1 at 8; Doc. No. 32-2 ¶¶ 3-4. When "BoomTV entered into the employment agreement with [Suski]," Gupta only communicated with Suski "by way of telephone and video conference calls" while Gupta was in California and Suski was in Massachusetts. Doc. No. 32-1 at 8; Doc. No. 32-2 ¶¶ 11, 14. Suski "executed the employment agreement in Massachusetts while BoomTV executed the agreement in California." Doc. No. 32-1 at 8. *See also* Doc. No. 32-2 ¶ 15 (averring that Gupta "signed the agreement as a representative of BoomTV"). Further, Gupta signed the October 2022 bonus letter in California. Doc. No. 32-1 at 8. BoomTV's personnel records indicate Suski was living in Massachusetts on October 5, 2022. Doc. No. 32-1 at 8; Doc. No. 32-2 ¶¶ 17-18; Doc. No. 32-2 at 5-6 (listing a Massachusetts address for Suski from February 1, 2020 to March 31, 2023).

However, Suski alleges he "lived and worked in Connecticut from March 31, 2023" through his termination on March 14, 2025.[3] Doc. No. 36 at 5. Suski contends that Gupta "knowingly maintained an ongoing employment relationship with a Connecticut-based employee, directed and supervised work performed in Connecticut, and retained exclusive authority over the compensation decisions giving rise to [Suski's] claims." *Id.* Although the

---

[3] Suski submits an affidavit alleging that he moved to Connecticut on August 29, 2022. Doc. No. 36-1 ¶ 11. However, BoomTV's employment records show Suski residing at a Massachusetts address until March 31, 2023 and moving to Connecticut thereafter. Doc. No. 32-2 at 5-6. My analysis on whether Connecticut's long-arm statute reaches Gupta remains the same irrespective of whether Suski moved to Connecticut in August 2022 or April 2023.

parties dispute whether BoomTV issued the bonus letter while Suski lived in Connecticut, the "majority" of the three years BoomTV had to pay the bonus "came and lapsed while [Suski] lived in Connecticut." *Id.*

Suski lived in Massachusetts at the time BoomTV, through Gupta, executed his employment contract. Doc. No. 32-1 at 2-3; Doc. No. 32-2 at 5-6. However, Suski lived in Connecticut for at least a year while working for BoomTV and allegedly being directly supervised by Gupta. Doc. No. 32-2 at 5-6; Doc. No. 36-1 ¶¶ 6. Further, Suski's employment with BoomTV was terminated while he lived in Connecticut. Doc. No. 32-2 at 5-6 (showing a Connecticut address beginning April 1, 2023); Doc. No. 36 at 5. BoomTV's termination of Suski, without paying the remainder of the bonus granted to Suski in October 2022, is the action giving rise to Suski's claims.

Following *Mills*, Gupta's alleged ongoing employment relationship with Suski from the date he moved to Connecticut until his termination would constitute a "business transaction sufficient to confer personal jurisdiction under section 52-59b(a)(1)." *Mills*, 2026 WL 25629, at *6. Accordingly, this court has personal jurisdiction over Gupta for claims arising from that employment relationship under section 52-59b(a)(1) of Connecticut's long-arm statute.

2. *Whether Suski alleges sufficient facts to confer jurisdiction over Gupta under section 52-59b(a)(2)*

Suski argues that this court can assert personal jurisdiction under section 52-59b(a)(2). Doc. No. 36 at 5-7. Section 52-59b(a)(2) confers personal jurisdiction on a nonresident individual who "commits a tortious act within the state." Conn. Gen. Stat. § 52-59b(a)(2) (excepting defamation of character from the provision).

However, courts have held that communications between parties are insufficient to confer jurisdiction under section 52-59b(a)(2) if the communications themselves are not the "*actus*

*reus*" of the plaintiff's claims. *Olkin v. Viveiros*, 2025 WL 27459, at \*4 (D. Conn. Jan. 3, 2025) (emphasis in original) ("While [the plaintiff] points to [the communications] as evidence of a broader unscrupulous course of conduct, they do not rise to the level of tortious conduct 'within the state,' so as to satisfy section 52-59b(a)(2) of the long-arm statute."). *See also Sanchez v. Corona*, 283 F. Supp. 2d 648, 654 (D. Conn. 2003), *aff'd*, 93 F. App'x 271 (2d Cir. 2004) ("Sanchez's assertion that Corona's filing of an affidavit in the New York litigation is either a tortious act in Connecticut or a transaction of business in Connecticut must fail because . . . the conduct did not occur in Connecticut."); *David v. Weitzman*, 677 F. Supp. 95, 97-98 (D. Conn. 1987) (holding an allegedly "fraudulent misrepresentation sent into [Connecticut] from Florida by mail and telephone" constituted tortious conduct "within the state" under both Conn. Gen. Stat. §§ 33-411(c)(4) and 52-59b(a)).

Further, the cases Suski cites are inapposite to the issue of personal jurisdiction under section 52-59b(a)(2). *See* Doc. No. 36 at 6; *Patch v. Stanley Works*, 448 F.2d 483, 491 (2d Cir. 1971) (analyzing where a tort occurred under choice of law purposes); *Connecticut Artcraft Corp. v. Smith*, 574 F. Supp. 626, 629-30 (D. Conn. 1983) (determining whether the court could assert personal jurisdiction under Conn. Gen. Stat. § 52-59b(a)(3) using the "critical events" test).

Any allegedly tortious conduct by Gupta occurred in California, where Gupta is domiciled and where BoomTV's principal place of business is located. *See* Doc. No. 36 at 6 (noting "Gupta's failure to authorize payment of wages owed to a Connecticut employee, while exercising authority over compensation decisions"); Doc. No 23 ¶¶ 4-6. Thus, this court cannot assert personal jurisdiction over Gupta under section 52-59b(a)(2).[4]

---

[4] Suski does not assert that this court has personal jurisdiction over Gupta under section 52-59b(a)(3). *See* Doc. No. 36 at 3-7. However, his argument implicates caselaw analyzing personal jurisdiction under that section. *Id.* at 6

B.  <u>Whether this court's exercise of jurisdiction over Gupta would comport with due process</u>

Gupta asserts that this Court "lacks both general personal jurisdiction and specific jurisdiction" over him and, therefore, exercising personal jurisdiction over Gupta "would fly in the face of constitutional due process."  Doc. No. 32-1 at 11.  Suski argues that this court may exercise specific jurisdiction over Gupta because Gupta: (1) "purposefully availed himself to the laws of Connecticut," and (2) "directed harmful action at [Connecticut]."  Doc. No. 36 at 7-8.

"If the long-arm statute permits personal jurisdiction, the second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution."  *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010).  "[T]he due process inquiry asks whether" asserting personal jurisdiction comports with "traditional notions of fair play and substantial justice."  *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotation marks omitted) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  Courts distinguish between specific and general jurisdiction.  *Metro. Life Ins. Co.*, 84 F.3d at 568-69 ("[A] court's general jurisdiction . . . is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts.").

---

(citing *Connecticut Artcraft Corp. v. Smith*, 574 F. Supp. 626, 630 (D. Conn. 1983)).  Regardless, section 52-59b(a)(3) cannot confer personal jurisdiction over Gupta because any injury to Suski occurred in Connecticut solely because his domicile was in Connecticut on the day of his termination.  *See Greene v. Sha-Na-Na*, 637 F. Supp. 591, 597 (D. Conn. 1986) ("[T]he plaintiff's residence or domicile within a state, in and of itself, is not a sufficient predicate for the exercise of jurisdiction."); *Connecticut Artcraft Corp. v. Smith*, 574 F. Supp. 626, 629-30 (D. Conn. 1983) (stating the same as previous).

12

Neither party argues this court has general jurisdiction over Gupta.  Doc. No. 32-1 at 10-11; Doc. No. 36 at 7-10.  Therefore, I will determine whether I may exercise specific jurisdiction over Gupta.

Specific jurisdiction "arises out of or relates to the defendant's contacts with the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (alterations adopted) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n.8 (1984)).  In determining whether exercising personal jurisdiction comports with due process, courts decide both:  "'whether a defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction over the defendant' and 'whether the assertion of personal jurisdiction over the defendant comports with traditional notions of fair play and substantial justice under the circumstances of the particular case.'"  *Johnson v. UBS AG*, 791 F. App'x 240, 242 (2d Cir. 2019) (quoting *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016)).

1.   *Whether Gupta has sufficient minimum contacts with Connecticut*

Gupta argues that Suski has not demonstrated that Gupta has the requisite minimum contacts with Connecticut because:  (1) Gupta has never been to Connecticut; and (2) Suski's relocation to Connecticut after entering into an employment relationship with BoomTV and Gupta "does not provide a basis to hale [Gupta] into court in Connecticut."  Doc. No. 32-1 at 11-12.

Suski responds that Gupta "deliberately engage[d] in significant activities" within Connecticut such that he "could reasonably foresee being haled into court" in Connecticut.  Doc. No. 36 at 7.  Further, Gupta's "failure to pay defined wages owed to Suski was an intentional act directed at a known Connecticut-based employee, with the knowledge that the economic injury would be suffered in Connecticut."  *Id.* at 8.

Courts decide whether to assert specific jurisdiction over a nonresident defendant by focusing on "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (internal quotation marks omitted) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)).  Gupta's "suit-related conduct must create a substantial connection with the forum State." *Walden*, 571 U.S. at 284.  That connection "must arise out of contacts the 'defendant himself' creates with the forum [state]." *Walden*, 571 U.S. at 284 (emphasis omitted) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985)).  Further, those contacts cannot be "random, fortuitous, or attenuated." *Walden*, 571 U.S. at 286 (internal quotation marks omitted) (quoting *Burger King Corp.,* 471 U.S. at 475).

Additionally, courts analyze "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285.  "[T]he plaintiff cannot be the only link between the defendant and the forum.  Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* ("[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.").  There must also be an "affiliatio[n] between the forum and the underlying controversy." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal citation and quotation marks omitted).

Gupta's contacts with Connecticut cannot "satisfy the defendant-focused 'minimum contacts' inquiry" because his contacts are based almost entirely on Suski's move to Connecticut and presence in Connecticut at the time of his termination. *Walden*, 571 U.S. at 284.  Gupta's contacts with Connecticut involved a weekly leadership call, placed while Gupta was in California, in which Suski participated and "regular follow-ups during the month, averaging two to three additional one on one conversations" with Suski.  Doc. No. 36-1 ¶¶ 8-9.  Those contacts

14

are largely incidental to Suski's move to Connecticut, as opposed to Gupta purposefully availing himself to the "privilege of conducting activities" in Connecticut or invoking the "benefits and protections of its laws." *Burger King Corp.*, 471 U.S. at 475 (internal quotation marks omitted) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  The place where Suski picked up his phone for those calls is fortuitous and thus cannot satisfy minimum contacts.

Notably, Suski does not allege Gupta's precise role in the "underlying controversy" on which he sues.  Suski does not allege that Gupta personally fired him.  The October 2022 bonus letter on which Suski's claim against Gupta states that "BoomTV will pay [Suski's] bonus," not Gupta.  Doc. No. 23 at 9.  Whether or not the bonus letter was sent to Suski while he lived in Connecticut, Gupta's "suit-related conduct" of signing and sending the letter on behalf of BoomTV does not "create a substantial connection" between Gupta and Connecticut.  *Walden*, 571 U.S. at 284.  Any contacts Gupta has with Connecticut were not intentionally created by Gupta himself but are "random, fortuitous, or attenuated."  *Id.* at 286 (internal quotation marks omitted) (quoting *Burger King Corp.,* 471 U.S. at 475).  Further, the only affiliation between Connecticut "and the underlying controversy" is that Suski lived in Connecticut at the time BoomTV terminated his employment.  *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919 (internal citation and quotation marks omitted).

Similarly, in *Mills* the court held that employing a single remote employee, without any other connection, was insufficient to establish minimum contacts with Connecticut.  *Mills v. Profit Drivers LLC*, 2026 WL 25629, at *7 (D. Conn. Jan. 5, 2026) ("Profit Drivers has never had another employee within the state, transacts no business within the state, derives no revenue from the state, and has no office in the state. Further, neither Green nor Stoll has been physically present in Connecticut at any time during or following Mills's employment.").  Suski alleges that

BoomTV employed two other Connecticut residents who interacted with Gupta.  Doc. No. 36-1 ¶ 13 (listing two names of BoomTV employees who "worked directly with Gupta" and "resided in Connecticut").  Nevertheless, Suski does not allege that BoomTV or Gupta otherwise transacted business within Connecticut, derived revenue from Connecticut, or had an office in Connecticut.  *See Mills v. Profit Drivers LLC*, 2026 WL 25629, at *7.  As in *Mills*, BoomTV and Gupta did not "seek out [Suski] because he was in Connecticut[] and had no plan to form any connection to Connecticut through [Suski] by his labor or contacts."  *Id.* (emphasis omitted).

Construing all pleadings and affidavits in the light most favorable to Suski, he has failed to make a prima facie showing that Gupta has sufficient minimum contacts with Connecticut to satisfy the constitutional requirements of due process.  *See Sherman Associates v. Kals*, 899 F. Supp. 868, 870 (D. Conn. 1995).  Therefore, Suski has not sustained his burden of showing that this court can assert personal jurisdiction over Gupta.  *See Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).

2.  *Whether asserting personal jurisdiction over Gupta comports with traditional notions of fair play and substantial justice*

Even assuming Suski sustained his burden of showing Gupta has sufficient minimum contacts with Connecticut, "[t]he second stage of the due process inquiry asks whether the assertion of personal jurisdiction . . . is reasonable under the circumstances of the particular case."  *Metro. Life Ins. Co.*, 84 F.3d at 568.  "[I]t is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  "Much of the calculus also turns on whether the defendant had notice or warning that it might be subject to suit in the forum state."  *Estate of Mechling v. U.S. Bank Nat'l Ass'n*, 2024 WL 404539, at *15 (D. Conn. Feb. 2, 2024).

A court must evaluate the following factors to determine whether asserting personal jurisdiction is reasonable:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Metro. Life Ins. Co.*, 84 F.3d at 568. A court may decline to exercise jurisdiction if a defendant presents "a compelling case that the presence of some other considerations would render jurisdiction unreasonable," even if a plaintiff shows a sufficient amount of minimum contacts by the defendant. *Id.* (internal quotation marks omitted) (quoting *Burger King Corp.*, 471 U.S. at 477).

Gupta argues that he has never "purposefully availed [himself] of the privilege of doing business" in Connecticut and could not "foresee being haled into court" in Connecticut because he and Suski never entered into a contract—rather, Suski entered into a contract with BoomTV. Doc. No. 32-1 at 13 (highlighting Suski's breach of contract claim against BoomTV). Gupta contends that it is unreasonable to assert jurisdiction over him because his only contacts with Suski relevant to Suski's claim were in his capacity as BoomTV's CEO, not in his individual capacity. *Id.* 16-17.

Even if Gupta had sufficient minimum contacts with Connecticut, asserting jurisdiction over Gupta would not comport "with traditional notions of fair play and substantial justice" and would be patently unreasonable. *Metro. Life Ins. Co.*, 84 F.3d at 568 (internal citation omitted) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Although Gupta's signature appears on both Suski's 2019 employment agreement and 2022 bonus letter, he signed both documents in his capacity as BoomTV's CEO. *See* Doc. No. 32-3 at 4; Doc. No. 23 at 9. Gupta "never entered into any contract with Suski in [his] personal

17

capacity." Doc. No. 32-2 ¶ 15.  Suski's jurisdictional argument would render Gupta subject to suit wherever Suski decided to move his residence.  Additionally, exercising jurisdiction over Suski, a resident of California who has never been to Connecticut, will impose an immense burden on Suski.  That burden is particularly stark considering Gupta's inclusion in this action is due only to his role as CEO of BoomTV, which has recently filed for chapter 7 bankruptcy in the Northern District of California.  *See BoomTV, Inc.*, Dkt. No. 26-30254, Bankr. N.D. Cal, Doc. No. 1.

Connecticut has an interest in adjudicating Connecticut statutory Wage Act claims; however, the breach of contract claim will likely be governed under Delaware law pursuant to Suski's employment contract. *See* Doc. No. 32-3 at 2 (stating the employment agreement and "all acts and transactions pursuant hereto . . . shall be governed" by Delaware law).

Further, it is unclear whether adjudicating Suski's case in Connecticut will lead to "convenient and effective relief" or "efficient resolution of the controversy." *See Metro. Life Ins. Co.*, 84 F.3d at 568.  Gupta is currently unrepresented.  Doc. No. 44.  Suski states no reason why litigating his case in Connecticut would lead to a more efficient resolution than litigating it elsewhere.  Indeed, doing so may further delay its resolution due to Gupta's lack of counsel and location in California.

Finally, Connecticut and California both have a shared interest in ensuring employees are paid the wages owed by their employers.  Both states have mechanisms in place for employees to collect unpaid wages.  *See, e.g.,* Conn. Gen. Stat. § 31-58, *et seq.*; Cal. Lab. Code § 200, *et seq.* Effectively, this factor is balanced between asserting and not asserting personal jurisdiction.

Weighing the above factors with "traditional notions of fair play and substantial justice," I hold that it would be unreasonable for this court to assert personal jurisdiction over Gupta.

Gupta's actions do not demonstrate that he had fair warning or clear notice that he would be haled into Connecticut's courts. *See World-Wide Volkswagen Corp.*, 444 U.S. at 297; *Burger King Corp.*, 471 U.S. at 472. Asserting personal jurisdiction over Gupta does not comport with the due process. Therefore, I must **grant** Gupta's motion to dismiss for lack of personal jurisdiction, doc. no. 32.

Finally, I do not find it necessary to reach the question of whether Gupta is an "employer" under Conn. Gen. Stat. §§ 31-7la(l) and 31-72.[5] Regardless of Gupta's status as an employer under Connecticut law, Suski has not made a prima facie case that asserting personal jurisdiction over Gupta comports with the due process clause of the Fourteenth Amendment.

## IV.    Conclusion

For the foregoing reasons, Gupta's motion to dismiss for lack of personal jurisdiction, doc. no. 32, is **granted**. Count two is **dismissed without prejudice** to refiling in a district where Gupta is subject to the court's personal jurisdiction.

The Clerk is directed to terminate Gupta as a party.

So ordered.

Dated at Bridgeport, Connecticut, this 13th day of April 2026.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

---

[5] The question of personal jurisdiction is not "intertwined" with the merits of Suski's claims against Gupta. *See Conboy v. State*, 292 Conn. 642, 652 (Conn. 2009); *London v. Polishook*, 189 F.3d 196, 198 (2d Cir. 1999).

19